(50 South. 656.)

No. 17,503.

WALSHE v. ENDOM.

(Nov. 15, 1909.)

1. SPECIFIC PERFORMANCE (§ 13*) — WHEN GRANTED—DAMAGES.

Specific performance is not a remedy which can be demanded as of right in every case of violation of contract. The party aggrieved by such violation is in ordinary cases entitled only to damages. Specific performance is a character of relief which should be granted only where under the circumstances the thing ordered to be done is within the legal capacity of the party ordered to do it and the rights of parties not before the court are not involved.

[Ed. Note.—For other cases, see Specific Performance, Cent. Dig. §§ 30–32; Dec. Dig. § 13.*]

2. SPECIFIC PERFORMANCE (§ 13*) — WHEN GRANTED.

Courts should not order a party to do that which legally he is not entitled to do.

[Ed. Note.—For other cases, see Specific Performance, Cent. Dig. §§ 30–32; Dec. Dig. § 13.*]

(Syllabus by the Court.)

Appeal from Sixth Judicial District Court, Parish of Ouachita; J. P. Madison, Judge.

Action by Edward Walshe against Fred Endom. Judgment for plaintiff, and defendant appeals. Reversed.

Lamkin & Millsaps, for appellant. John M. Munholland, for appellee.

## Statement of the Case.

NICHOLLS, J. In plaintiff's petition, filed November 23, 1904, he alleged: That on or about the 29th of May, 1903, he leased from the defendant a certain described lot and building. That in addition to the said contract of lease, and incorporated therein, defendant obligated himself as follows, to wit:

"It is further agreed and understood that the lessee shall have the right and the option to purchase said building and lot at a price not to exceed sixty-five hundred ($6,500.00) dollars at any time between July 1, 1903, and July 1, 1904, which said purchase, if perfected, shall terminate this lease; but, in the event the lessee should not wish to purchase the said property, this purchase clause shall in no way conflict with or disturb any feature of this lease. Should the lessee decide to buy the said property, the lessor hereby agrees and binds himself to make over to the lessee an acceptable title to the same, all of which will more fully appear by reference to the said option and contract of lease, a copy of which is annexed hereto, and made a part of this petition, and marked 'A.'"

That the said Endom by the said agreement obligated and bound himself to sell to your petitioner the property herein described at any time between July 1, 1903, and July 1, 1904, for $6,500, and that the defendant further obligated himself to make to petitioner an acceptable legal title to the said property. That on or about the 15th day of May, 1904, petitioner informed the said Endom that he, your petitioner, was ready and willing to pay to the said Endom $6,500, stipulated in the said option, and demanded of the said Endom that he make over to your petitioner an acceptable legal title to the said property free from incumbrances. Petitioner shows that the defendant expressed his desire and willingness to make the title to petitioner, but averred and reiterated that there were other parties interested in the property whose consent he would have to obtain, and that after making use of any and all delays that he could, and your petitioner believing that he was not desirous of completing this sale, on or about the 15th day of June, 1904, in the office of the de-

fendant at his livery stable in the city of Monroe, La., and in the presence of two legal and competent witnesses, petitioner put defendant in default by tendering to the defendant in legal tender money of the United States $6,500 in cash, and demanded of him that he make an acceptable legal deed of the said property from himself to petitioner, which the defendant refused, and that at various and sundry times, both before and after said time, the defendant has refused to deed the said property to your petitioner.

Petitioner further shows that he is entitled to specific performance of the said contract, and that the defendant, instead of performing his said contract, and with a view of making it arduous and difficult to perform the same, since the execution of the agreement to sell, and while promising petitioner that he would make an acceptable legal title of the said property to petitioner, incumbered the said property to the Monroe Building & Loan Association to secure money borrowed from the said Monroe Building & Loan Association, and that it is the duty and obligation of the defendant to free the said property from all incumbrances that exist thereon before or after the 29th day of May, A. D. 1904. That the value of the said property has enhanced and is constantly enhancing, and that petitioner has to pay rent thereon for his business, and that by the said failure and refusal of the defendant to make over to petitioner a legal and acceptable title to the said property he has damaged and is damaging your petitioner in the sum of $3,000.

That from and since the 15th day of May, 1904, and particularly from the date of his putting the defendant in default, he has at all times been ready and willing to accept a good and sufficient title to the said property and pay therefor the stipulated price.

In view of the premises, he prayed that defendant be cited, and that there be judg-ment in his favor and against defendant, ordering and decreeing a specific performance of the promises made by the defendant in document marked "Exhibit A" and attached to this petition, and that the defendant be ordered within a time, to be fixed by your honorable court, to execute and deliver to petitioner a formal deed to the property herein described; and if, in the alternative, your honor should decree that the petitioner is not entitled to a specific performance of his said contract by the execution of a deed by the defendant to the said property, or the defendant can avoid a specific performance of the said contract by the payment of the damages, then and in that event petitioner prayed that he have judgment against the defendant in the sum of $3,000, for the violations of his said contract and failure to comply with and carry out the same, together with legal interest from judicial demand; for all necessary proceeds for costs and general relief.

Defendant excepted:

(1) That all necessary parties have not been joined together in this suit.

(2) That the agreement alleged on and annexed to plaintiff's petition was made and entered into with another person, other than plaintiff herein, and that plaintiff is a stranger to said agreement or contract, and is without the right or authority to institute this suit, or the capacity to stand in judgment for Ouachita Gun & Bicycle Company.

Defendant prayed that this his exception be sustained, and plaintiff's suit dismissed, at his costs.

On June 20, 1905, the court sustained the exception and dismissed the suit. On the same day plaintiff, alleging that the judgment dismissing his suit on exception was contrary to the law and the evidence, prayed that he be granted a new trial. The motion was not taken up and argued until June 13, 1908. At that time a new judge had

taken his seat on the district bench. On the 26th of June, 1908, a new trial was granted. On October 2, 1908, defendant's exceptions were taken up, tried and overruled. On October 20, 1908, defendant, under reservation of his exceptions, answered. He admitted the execution of the contract and agreement annexed to the petition, but generally and specifically denied all the allegations of the petition. Further answering, he averred: That the lease, contract, and agreement was made and entered into by him with the Ouachita Gun & Bicycle Company, a commercial partnership domiciled in Monroe, La., composed of Edward Walshe and Frank Manasco, and not with the plaintiff, as alleged.

That at the time of the execution of said contract, as well as on June 15, 1904, the date of the alleged tender by plaintiff of the purchase price, the Ouachita Gun & Bicycle Company, lessee, as well as Edward Walshe, plaintiff, well knew that the property described in plaintiff's petition was owned in indivision by respondent and Aloise H. Endom, Louis C. Endom, Fred. C. Endom, and Kate Endom, the three last mentioned being then minors and all children of Katharine Endom, deceased, and respondent, and that he was without the right or authority to sell their one-half interest therein. Petitioner further averred that the property in controversy was leased at a nominal price from July 1, 1904, to June 30, 1908, to the Ouachita Gun & Bicycle Company, and that no consideration whatever was promised or given respondent for the pretended agreement to sell said property to the Ouachita Gun & Bicycle Company, or any one else, and therefore the so-called agreement to sell was null and void.

In the alternative, respondent averred that, in event this honorable court should hold that the contract or agreement to sell was legally binding and had a valid and adequate consideration (but which was denied),

then he showed that said plaintiff was equitably and legally estopped from enforcing a specific performance of said agreement or from recovering damages thereunder for its alleged breach, because he, either as proprietor of the Ouachita Gun & Bicycle Company or as president of the Ouachita-Monroe Gun & Bicycle Company, Limited, had occupied the leased premises continuously since and prior to June 15, 1904, the date of the alleged tender of the purchase price, under the lease contract made between respondent and the Ouachita Gun & Bicycle Company, and had paid the rent promptly at the expiration of each and every month to June 30, 1908, the date of the expiration, and that by so doing, either as proprietor or as president of the Ouachita Gun & Bicycle Company and the Ouachita-Monroe Gun & Bicycle Company, Limited, respectively, he had renounced and waived all rights which he or the Ouachita Gun & Bicycle Company may have had for a specific performance of the contract or for the recovery of damages for its alleged violation, and had in addition by his said conduct equitably and legally estopped himself and the Ouachita Gun & Bicycle Company from asserting any right thereunder.

He prayed that plaintiff's demand be rejected, and for equitable and general relief.

On November 23, 1908, the plaintiff filed what he styled a plea of estoppel, in which he alleged that: Defendant contracted with and collected and received rent of plaintiff under the contract of lease and options as stipulated therein; that at the termination of the lease defendant notified plaintiff in writing as lessee that the lease had expired by limitation and demanded possession of the property; that by said acts defendant was estopped from denying that plaintiff was lessee or owner of the option sued on. He prayed that the plea of estoppel be sustained, and that defendant be estopped from

denying that plaintiff was lessee or owner of the option to buy in the lease contract.

On February 6, 1909, the district court rendered judgment ordering, adjudging, and decreeing that defendant, within 30 days from date of the judgment, execute and deliver to the plaintiff, Edward Walshe, a lawful deed conveying and transferring to him, free of all privileges and mortgages, including any claims due for taxes to July 1, 1908, and that certain tutor's legal mortgage executed by Fred Endom, Sr., tutor, for $16,554.28 in favor of the judge of Fifth judicial district court for the parish of Ouachita, state of Louisiana, recorded in Mortgage Book 27, at page 122, and free of all lawful claims to the title by his children, Josephine, Gustave, Louis, Aloise, Louise, Frederick, and Kate Endom, as heirs of defendant's deceased spouse, Mrs. Katharine Endom, to the following described property: [Describing it.] It further ordered, adjudged, and decreed that, upon execution of deed and transfer of title as herein directed, the $6,500 judicially deposited by the plaintiff shall be paid over to the defendant in full satisfaction of the purchase price of said property; that, in the event of default or failure of defendant to execute and deliver to plaintiff a lawful deed and title to the property as herein directed, this judgment shall itself become title of plaintiff to said property, and the $6,500 shall remain judicially deposited until the cancellation of the said tutor's legal mortgage recorded in Mortgage Record 27, at page 122, of the parish of Ouachita, La., in so far as it affects or incumbers said property, and the release and extinguishment of all lawful claims to the title by the children of defendant, namely, Josephine, Gustave, Louis, Aloise, Louise, Frederick, and Kate Endom, and the cancellation of any privilege due on said property for taxes; that upon the cancellation of said tutor's mortgage, and the production of tax receipts showing the payment of all taxes lawfully due against said property to July 1, 1908, and the release or extinguishment of the lawful claims of the aforesaid children of defendant to any interest they may have in the said property, it is ordered that the $6,500 judicially deposited by plaintiff be paid over to the defendant or his order. It was further ordered that defendant pay all costs of this suit.

Defendant applied for and obtained an order for appeal from the judgment. The transcript of appeal has been duly filed, and the case is before the court for decision on appeal.

Plaintiff has answered the appeal, praying that the judgment appealed from be affirmed; but, should the court not decree a specific performance, then plaintiff in the alternative prayed for judgment against defendant for the sum of $3,000, for damages, with interest from judicial demand, and costs in both courts.

### Opinion.

The evidence discloses that on the day of the lease and up to the present time the property leased in the act of May 29, 1903, did not belong to the defendant in its entirety, but belonged to the community of acquets and gains which had existed between himself and his deceased wife, that he owned one undivided half as owner, and the other half as usufructuary of the wife's share in the community, and that his share in the property was struck by a legal mortgage in favor of his children for about $17,000 to secure their rights as heirs of their mother. Under such circumstances it was impossible for defendant to have sold the property to the lessee, however much he might have desired to do so, under a satisfactory or acceptable legal title. The plaintiff, Walshe, being on the stand as a witness in his own behalf, being asked the question, "You heard Mr. John Munholland [the at-

torney who drew up the act of lease] state that he knew that Mr. Endom's children owned an interest in the property?" replied that he never knew anything about it until about the time the tender was made. He heard about it a little before or a little after. Being asked, "After you found out that the children owned a half interest in this property, did you demand them, or any one of them, to sign a deed to the property?" he replied: "Before I made the tender, a few days, I do not remember just now how long, I passed by there, and I called to Mr. Endom. I told him that I would be ready for the deed in a few days. His answer was: 'I positively refuse to do it' "—as it was purely optional on his part, and nothing put up on his (witness') part. After the tender he had never shown any willingness to make the title.

Being asked, "What was the property which was the subject of this suit worth?" he answered, "Between $10,000 and $12,000." Being asked on what he based his alternative demand for $3,000 damages, he answered: "By not becoming the owner of the property for the purchase price at that time, and what the property is worth now; in other words, from the time I should have come in possession of it to the present time." Being asked what it was worth on June 15, 1904, he answered, "That is a hard question to answer correctly," but he considered that it was worth more than at the time he made the lease. Witness understood that the property had enhanced in value for the last five years. Being asked, "What was the property worth on May 29, 1903, when the contract of lease was made?" he replied that he considered he was paying a good price for it at that time. Witness said he was not able to say what it was worth on June 15, 1904, but the property was increasing in value; that it was hard for him to say what it was worth at the dates he was testifying; that

124 LA.—23

he did not know. Plaintiff placed Mr. Easterling, a real estate broker, on the stand to prove the value of the property. He testified that he knew the property in contest; that in his opinion a fair valuation of it was $300 a front foot—that is, that was the value of the naked lot. He did not know what the value of the improvements was; that the building on the property covered the entire lot. The evidence above referred to was the only evidence introduced by the plaintiff as to the value of the property in contest or the subject of damages.

A question arose in this case in the trial court as to who was the lessee under the act of May 29, 1903.

Was it the Ouachita Gun & Bicycle Company, or was it Edward Walshe, who in the act of lease was referred to as the proprietor of that company. An examination of the evidence discloses that the Ouachita Gun & Bicycle Company was only organized after the date of the contract of lease was executed, and that plaintiff was the only party in interest in the business then conducted under the name of that title. There was no assignment by plaintiff of his rights under the contract of lease to the corporation subsequently formed.

The testimony shows that the lessee took possession of the property leased at the date of the commencement and paid to defendant regularly the installments of rent as they fell due up to the expiration of the term of the lease as fixed in the contract of lease. Defendant argues from that fact that, even if plaintiff had had any right to a specific performance under the contract, he abandoned or renounced it. He cites in support of that position volume 18 of the American & English Encyclopedia of Law, p. 632, and the case of Knowles v. Murphy, 107 Cal. 107, 40 Pac. 111. He refers to Hanson v. Allen, 37 La. Ann. 732, in support of the proposition that, pending a lease, the lessee cannot dis-

pute the title of his lessor. We are of the opinion that the judgment of the district court is erroneous, and should be reversed. It is impossible for the defendant to vest in the plaintiff ownership of the property referred to in the petition. It is not his to sell. The court should not have ordered him to do what he had no legal right to do. We do not think the case is one where specific performance could or should be ordered. It is not a remedy which can be demanded of right. It is a character of relief which is to be granted only where, under the circumstances of the case, the thing ordered to be done is within the legal capacity of the party to do, and the rights of parties not before the court are not involved. In cases of violations of a contract, the party aggrieved is in ordinary cases entitled only to damages. Appellant, in his answer to plaintiff's appeal, prays that, should the court refuse to affirm the judgment as rendered, we should award him damages.

We are of the opinion that, under the circumstances of this case, that prayer should not be granted, but that the right of the plaintiff to damages should be left open for future examination and decision. For the reasons herein assigned, it is hereby ordered, adjudged, and decreed that the judgment appealed from be and the same is hereby annulled, avoided, and reversed. It is further ordered, adjudged, and decreed that plaintiff's demand, in his answer to the present appeal to have judgment in his favor against defendant, be not granted, but that his right to damages be left open for future examination and decision. Plaintiff's suit is dismissed without prejudice, and he is decreed to pay the costs of both courts.

BREAUX, C. J., and MONROE and LAND, JJ., concur in the decree.

PROVOSTY, J., concurs in the decision, in so far as the demand for specific perform-ance is rejected, and dissents in so far as the demand for damages is dismissed, holding that damages ought to be awarded, at least to an amount equal to the rents paid, less interest on the unpaid price of the sale.